## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SHAUN P. BIRGE,

Case No.

Hon.

     Plaintiff,

v.

RSM US LLP, a foreign limited liability partnership,
MICHAEL DINGWALL, in his corporate and individual capacities,
PATRICIA JORDAN, in her corporate and individual capacities,
JENNIFER NORRIS, in her corporate and individual capacities,
YOUSUF RIZVI, in his corporate and individual capacities, and
JAMES WARD, in his corporate and individual capacities,

     Defendants.

---

THOMAS R. WARNICKE (P47148)
LAW OFFICES OF THOMAS R. WARNICKE PLLC
16291 W. 14 Mile Road, Suite 21
Beverly Hills, MI 48025
(248) 930-4411
tom@warnickelaw.com
Attorneys for Plaintiff

---

### PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff, Shaun P. Birge, by and through his attorneys, the Law Offices of

Thomas R. Warnicke, PLLC, states as and for his Complaint against Defendants as

follows:

## JURISDICTION AND VENUE

1. This action arises out of the illegal and wrongful discharge of Plaintiff, SHAUN P. BIRGE ("Plaintiff'), on or about February 27, 2018, inter alia, who was terminated from his employment based, in whole or in part, because of his race and for retaliation in violation of 42 USC§ 2000e *et seq*. (Title VII of the Civil Rights Act of 1964, as amended), the Civil Rights Act of 1991, 42 USC § 1981 and for violations of the Elliott-Larson Civil Rights Act (ELCRA) MCL 37.2101 *et seq*.

2. Plaintiff is bringing this civil action to recover damages and injunctive relief against Defendants for committing acts prohibited under federal and state law.

3. Plaintiff currently resides in Southfield, Michigan, and at all times relevant hereto, was a citizen and resident of the County of Oakland, and State of Michigan and within the jurisdiction of this Court.

4. Plaintiff is an African-American male.

5. Upon information and belief, Defendant RSM US LLP, (herein after referred to as "RSM" or "Defendant RSM") is a foreign limited liability partnership, organized under the laws of the state of Iowa, with its principal office located in Chicago, Illinois.

2

6. RSM also maintains a business location at 719 Griswold Street, Suite 820, Detroit, Michigan 48226, which is the location where Plaintiff was employed with RSM, and thereby conducts business within the jurisdiction of this Court.

7. Upon information and belief, Defendant RSM is a public accounting firm which specializes in audit, tax, and consulting services, with over 9,500 employees.

8. Upon information and belief, the resident agent designated by Defendant RSM with the State of Michigan's Department of Licensing and Regulatory Affairs to be served with legal process is CSC-Lawyers Incorporating Service Company, 601 Abbot Road, East Lansing, Michigan 48823.

9. Upon information and belief, Defendant MICHAEL DINGWALL, was at all times relevant times hereto, a Partner at Defendant RSM.

10. Upon information and belief, Defendant MICHAEL DINGWALL is a citizen and resident of the State of Michigan, and/or otherwise within the jurisdiction of this Court.

11. Defendant MICHAEL DINGWALL is Caucasian.

12. Upon information and belief, Defendant PATRICIA JORDAN, was at all times relevant times hereto, employed as an HR Employee Relations Director at Defendant RSM.

13. Upon information and belief, Defendant PATRICIA JORDAN is a citizen and resident of the State of Michigan, and/or otherwise within the jurisdiction of this Court.

14. Defendant PATRICIA JORDAN is not African American.

15. Upon information and belief, Defendant JENNIFER NORRIS, was at all times relevant times hereto, employed as an HR Regional Manager at Defendant RSM.

16. Upon information and belief, Defendant JENNIFER NORRIS is a citizen and resident of the State of Michigan, and/or otherwise within the jurisdiction of this Court.

17. Defendant JENNIFER NORRIS is Caucasian.

18. Upon information and belief, Defendant YOUSUF RIZVI, was at all times relevant times hereto, employed as a Senior Associate at Defendant RSM.

19. Upon information and belief, Defendant YOUSUF RIZVI is a citizen and resident of the State of Michigan, and/or otherwise within the jurisdiction of this Court.

20. Defendant YOUSUF RIZVI is not African-American.

4

21. Upon information and belief, Defendant JAMES WARD, was at all times relevant times hereto, employed as a Senior Manager at Defendant RSM.

22. Upon information and belief, Defendant JAMES WARD is a citizen and resident of the State of Michigan, and/or otherwise within the jurisdiction of this Court.

23. Defendant JAMES WARD is Caucasian.

24. The actions and practices of Defendants alleged to be unlawful in this matter occurred in the County of Wayne, and State of Michigan, which was the location where Plaintiff was employed by Defendant RSM, all within the jurisdiction of this Court.

25. With respect to the federal claims asserted herein, the Court's jurisdiction is invoked pursuant to 28 USC §§ 1331 and 1343 for violations of Plaintiff's federal statutory rights.

26. Venue is proper in this district pursuant to 28 USC § 1391(b), since the events giving rise to the claims occurred in this district.

27. This Court has pendent jurisdiction over Plaintiff's state law claims, which exceed $75,000, exclusive of costs, interest and attorney fees.

28. On or about March 15, 2018, Plaintiff filed a Charge of Discrimination relating to this matter with the EEOC, a copy of which is attached hereto as **Exhibit A** and is incorporated by reference.

29. On September 4, 2018, the EEOC issued and mailed to Plaintiff a
    Dismissal and Notice of Rights letter, a copy of which is attached hereto as
    **Exhibit B** and is incorporated by reference.

30. Plaintiff filed this lawsuit within 90 days of his receipt of the Notice of
    Rights letter dated September 4, 2018.

### GENERAL ALLEGATIONS AND STATEMENT OF CLAIMS

31. Plaintiff repeats and re-alleges the allegations set forth above.

32. Prior to the start of his employment with Defendant RSM, Plaintiff
    completed his CPA exam.

33. On or about October 26, 2016, Plaintiff began his employment with
    Defendant RSM as an Assurance Associate.

34. Throughout most of Plaintiff's employment, he reported to Senior
    Manager/Career Advisor, Defendant James Ward.

35. Plaintiff was the only African-American in the RSM Detroit office that had
    completed the CPA exam.

36. Despite this accomplishment, from November 10, 2016 through January 13,
    2017, Plaintiff was prevented by Defendants James Ward, and Partner,
    Michael Dingwall, from having job assignments, as they attempted to hold
    Plaintiff back and allowed other similarly situated non-African employees
    to advance.

37. While Plaintiff continuously asked for work, his requests fell on deaf ears; however, Plaintiff's fellow colleagues James Gomez and Luna Mishoe were given available assignments, although they were not as qualified as Plaintiff.

38. In addition to being treated differently than other similarly non-African America employees in the office, Plaintiff was not provided sufficient training or instructed from higher level personnel.

39. Yet, Plaintiff still performed above average.

40. From June 2017 through November 2017, Defendants harassed Plaintiff whenever they had the opportunity.

41. Defendants' harassment of Plaintiff was due to Plaintiff's race.

42. On or about March 3, 2017, Plaintiff discovered that Sr. Associate, Defendant Yousuf Rizvi, altered Plaintiff's accounts payable assignment on an engagement.

43. Defendant Rizvi removed audit procedures and critical documentation (First Check, Last Check) in order to make it appear as if Plaintiff was incompetent.

44. On or about March 10, 2017, Plaintiff spoke to Defendant Rizvi regarding the changes, however, Defendant Rizvi failed to explain why he made the

changes and stated that Plaintiff was right about communicating the situation to him.

45. On or about March 18, 2017, Senior Manager, Defendant James Ward, confronted Plaintiff with multiple bogus accusations of behavioral and performance problems.

46. Defendant Ward stated that Plaintiff had attitude problems, was struggling with his work, and that Plaintiff was checking out mentally.

47. Plaintiff responded to Defendant Ward that he had no idea what Defendant Ward was talking about and that Plaintiff needed specific examples.

48. Defendant Ward failed to provide any details of the unfounded and unsupported accusations.

49. Immediately after the meeting, Plaintiff began to seek feedback from his past engagements.

50. On or about May 3, 2017, Plaintiff spoke with Defendant Rizvi about details regarding Plaintiff's review.

51. Defendant Rizvi informed Plaintiff that he did not have to write a review and that Defendant Michael Dingwall and Defendant James Ward were fully aware of Plaintiff's performance.

52. Plaintiff asked if he could give him details and Defendant Rizvi stated that Plaintiff had an attitude problem and his performance was lacking.

53. Plaintiff asked Defendant Rizvi on perception of the engagement and Rizvi became very enraged.

54. Defendant Rizvi stated that he had better things to do than to speak about Plaintiff's review and began to ridicule/mock Plaintiff.

55. Defendant Rizvi's treatment of Plaintiff was because of Plaintiff's race, as Defendant Rizvi did not treat Plaintiff's similarly situated employees in the same manner.

56. Plaintiff removed himself from the situation and informed Rizvi that he would reach out to senior management regarding the situation.

57. On or about May 15, 2017, Plaintiff attended Employee Benefit Plan training in Cleveland, Ohio.

58. Prior to attending, Defendant Michael Dingwall informed the office that it was mandatory to attend the Level l: Employee Benefit Plan training and Level 2: Employee Benefit Plan training was optional.

59. Plaintiff emailed Defendant James Ward to reschedule a meeting so Plaintiff could attend Level 2 training which was already approved by Defendant Michael Dingwall.

60. Defendant James Ward questioned Plaintiff's initiative stating "Who recommended and where is it being held?"

61. After a couple email exchanges, Defendant James Ward purposely stopped responding, preventing Plaintiff from attending Level 2 training.

62. Defendant Ward's actions against and toward Plaintiff was due to Plaintiff's race.

63. On or about May 16, 2017, Defendant James Ward and Plaintiff had a meeting regarding Plaintiff's year-end performance.

64. Defendant Ward stated that he was surprised Plaintiff didn't receive any constructive criticism and questioned Plaintiff's character.

65. Plaintiff was surprised by the comments and Defendant Ward moved on to ask Plaintiff to act like fellow associate, Luna Mishoe.

66. Plaintiff was immediately offended as Defendant Ward, in short, asked Plaintiff to act like the other African-American in the office and refrain from being himself, which was that he should be quiet, docile and be allowed to let himself be mistreated and discriminated against.

67. On or about June 5, 2017, Plaintiff was wrongfully disciplined for performance issues that were untrue.

68. Specifically, Defendant Ward informed Plaintiff that he was taking progressive disciplinary action towards Plaintiff by enforcing an Employee Counseling Report.

69. Defendant Ward deliberately and maliciously falsified information in the report stating that Plaintiff could not do basic accounting functions and attempted to force him to sign the report.

70. Plaintiff refused.

71. By enforcing that report, Defendant Ward prevented Plaintiff from earning a salary increase and possibly hindering his chances to be promoted to Sr. Associate in the upcoming year.

72. Defendant Ward's actions against Plaintiff were due to Plaintiff's race.

73. On or about June 7, 2017, Plaintiff initiated a meeting with Defendant Michael Dingwall and HR Regional Manager, Defendant Jennifer Norris.

74. During this meeting, Plaintiff shared his concerns with persuasive evidence to refute the Employee Counseling Report enforced by Defendant Ward.

75. However, Defendant Dingwall and Defendant Norris were complicit in the discriminatory treatment of Plaintiff by refusing to look at Plaintiff's evidence and stated that they fully supported Defendant Ward's decision to take progressive disciplinary action towards Plaintiff.

76. Plaintiff requested that evidence be provided to support the Employee Counseling Report, which Plaintiff should have been provided with by his Supervisors prior to the enforcement of the report.

77. Defendants Michael Dingwall and Jennifer Norris denied Plaintiff's request.

78. Defendant Dingwall's and Norris' actions were deliberate and intentional discrimination and harassment to Plaintiff due to his race.

79. On or about June 21, 2017, Defendant Ward initiated a meeting with Plaintiff regarding an email Plaintiff sent.

80. Defendant Ward was displeased because Plaintiff had requested clear and precise details for his assignments.

81. During this meeting, Defendant Ward became enraged as Plaintiff informed him that Plaintiff had no choice but to detail his work and protect himself.

82. Plaintiff explained to Defendant Ward that he was fully aware of the lies in the Employee Counseling Report and it was insulting to state that Plaintiff couldn't "Foot."

83. Footing is an accounting term meaning adding all numbers in a single column.

84. Defendant Ward stated, "That is exactly what he meant."

85. It was a further insulting, belittling implication that Plaintiff couldn't add or subtract and having passed the CPA exam meant nothing to him.

86. Again, such comments were harassing and discriminatory toward Plaintiff because of Plaintiff's race.

87. On or about July 7, 2017, Defendants Ward and Dingwall informed Plaintiff that they gave him a low performance rating for the year.

88. Again, Plaintiff requested that they provide evidence to support this decision.

89. Both denied Plaintiff's request and Defendant Ward went on to insult and belittle Plaintiff, again stating that Plaintiff could not add and subtract.

90. Defendant Dingwall added, "Plaintiff needed to own his faults."

91. Defendants comments and treatment toward Plaintiff, including the bogus negative performance rating, were due to Plaintiff's race and/or in retaliation for Plaintiff's complaints of discrimination.

92. On or about August 16, 2017, Defendants Ward and Norris initiated a meeting with Plaintiff in order to attack him because he did not initiate meetings as stated in the Employee Counseling Report.

93. Plaintiff informed Defendant Norris that everybody involved in this situation, including her, had denied Plaintiff evidence to support the Employee Counseling Report.

94. Plaintiff went on to explain to her that meetings were not mandatory and Plaintiff's doctor recommended that he avoid stress.

95. Every meeting with Defendant Ward resulted in insults and harassment.

96. The harassment was on an on-going basis, which was due to Plaintiff's race.

97. Defendant Norris ignored Plaintiff's claims and stated that she and Defendant Ward worked together to enforce the Employee Counseling Report against Plaintiff.

98. Plaintiff informed Defendant Norris that neither she nor Defendant Ward followed the corporate guidelines.

99. Defendant Norris responded that it was not corporate policy and stated that RSM management had the right to use their arbitrary and capricious judgment to interpret the rules depending on the circumstances.

100. However, such judgment was discriminatory against Plaintiff because of his race.

101. On or about September 11, 2017, Defendant Dingwall was assigned as Plaintiff's new Career Advisor, after Plaintiff's request.

102. On or about September 13th and 28th of 2017, Defendants Dingwall and Norris, on both occasions, threatened Plaintiff that he better do well for his San Antonio job.

103. Plaintiff performed well during the San Antonio audit engagement which was conducted from October 9 to November 10, 2017.

104. Plaintiff's good work during the San Antonio engagement was evidenced by Project Team Leader, Justin Kansas's review of Plaintiff's performance.

105. Justin Kansas even indicated in the review that he would accept working on a future project with Plaintiff.

106. On or about November 26, 2017, Plaintiff made a complaint of race discrimination to Defendants' Human Resources.

107. However, Defendants took no corrective or remedial action.

108. Specifically, Plaintiff sent an email requesting corrective action from Defendant Norris.

109. In Plaintiff's email, he stated that Defendants Norris and Ward, as well as the rest of Defendant RSM's management colluded together to discriminate against Plaintiff because he was African American.

110. Plaintiff requested an amendment of his 2017 performance review, reinstatement as a good standing employee, and all the back pay for a salary increase he deserved.

111. Plaintiff's email was forwarded by Defendant Norris to SPHR - Employee Relations Director, Defendant Patricia Jordan.

112. Defendant Jordan began an "investigation" regarding Plaintiff's complaint of race discrimination.

113. On or about January 23, 2018, Defendant Jordan concluded her "investigation."

114. Defendant Jordan's "investigation" made a finding that Plaintiff was not subjected to any discrimination.

115. In reality, Defendant Jordan didn't conduct an impartial or complete investigation, rather, he "investigation" was superficial and outcome-determinative of no discrimination even before she started.

116. Thereafter, Defendant Jordan began to harass Plaintiff through email correspondence and attempted to manipulate Plaintiff into signing two separate affidavits to falsely agree that Plaintiff did not have anything to support his claims of racial harassment and discrimination.

117. On or about February 27, 2018, Plaintiff was terminated from his job with RSM.

118. The reason give to Plaintiff for his termination was allegedly for poor performance.

119. However, the alleged reason was bogus, untrue and unsupported by Plaintiff's performance reviews and the truth relating to his employment.

120. In fact, Defendants' reason for terminating Plaintiff was a pretext for Defendants' real reason for Plaintiff's termination, which was unlawful

discrimination due to Plaintiff's race and in retaliation for Plaintiff complaints of racial discrimination.

121. Specifically, Defendant Dingwall, who was supposed to be Plaintiff's career advisor/mentor, terminated Plaintiff immediately without support or approval from the Chicago office and without warning.

122. This termination violated RSM's Employment contract with Plaintiff.

123. Defendant Dingwall stated that Plaintiff was being terminated due to alleged unsatisfactory performance.

124. However, Defendant Dingwall couldn't and wouldn't state any specific jobs or projects where Plaintiff was performing poorly, nor could he produce evidence of oral or written warning communications or notices.

125. Clearly, Plaintiff's termination was done in retaliation for his complaint that he was being discriminated against based on his race by his Caucasian superiors and for reporting them for violating the RSM performance review policy due to his race.

126. Soon after, Defendant Dingwall, and Partner/Great Lakes Regional HR Leader, Jeff Fago, attempted to hoax Plaintiff into signing a separation agreement to prevent him from taking legal action.

## COUNT 1

## <u>VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT</u>

## <u>42 USC § 2000e *et seq*.</u>

127. Plaintiff repeats and re-alleges the allegations set forth above.

128. Plaintiff belongs to a protected class because of his race.

129. By the acts and practices described above by Defendants in their individual and/respective corporate capacities, Plaintiff was subjected to race, discrimination and retaliation, thus depriving Plaintiff of his rights under 42 USC§ 2000e-2.

130. By the acts and practices of showing deliberate indifference toward the actions of Defendants and other employees, Defendants willfully disregarded Plaintiffs rights under 42 USC § 2000e-2.

131. By the acts and practices by Defendants described above, Plaintiff was subjected to retaliation, thus depriving Plaintiff of his rights under 42 USC§ 2000e-3.

132. Plaintiff was treated less favorably and in an unequal manner than the Caucasian and/or non-African American similarly situated employees.

133. The stated reasons for Plaintiff's termination were not the true reasons for Plaintiffs termination but were a pretext for Defendants' discriminatory animus because of Plaintiff's race.

134. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, damages for mental anguish, emotional distress and humiliation.

135. Defendants engaged in these practices with malice and with reckless disregard and indifference to Plaintiffs federally protected rights.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendants, jointly and severally, as follows:

a. Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

b. Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

c. Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

d. An award for the value of lost fringe and pension benefits, past and future;

e. An award of interest, costs, and reasonable attorney fees;

f.    An injunction prohibiting any further acts of retaliation or discrimination; and

g.    Whatever other equitable relief appears appropriate at the time of final judgment, including but not limited to reinstatement.

## COUNT 2

## VIOLATION OF THE CIVIL RIGHTS ACT OF 1991

## 42 USC § 1981

136. Plaintiff repeats and re-alleges the allegations set forth above.

137. Plaintiff belongs to a protected class, as set forth above.

138. By the acts and practices described above by Defendants in their corporate capacities, Plaintiff was subjected to race discrimination and retaliation, thus depriving Plaintiff of his rights under 42 USC § 1981.

139. By the acts and practices of showing deliberate indifference toward the actions of Defendants and the employees, Defendants willfully disregarded Plaintiffs rights under 42 USC § 1981.

140. By the acts and practices by Defendants described above, Plaintiff was subjected to retaliation, thus depriving Plaintiff of his rights under 42 USC§ 1981.

141. Plaintiff was treated less favorably and in an unequal manner than the Caucasian and/or non-African American employees.

142. The stated reasons for Plaintiff's termination were not the true reasons for Plaintiff's termination but were a pretext for Defendants' discriminatory animus.

143. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, and damages for mental anguish, emotional distress and humiliation unless and until this Court grants relief.

144. Defendants engaged in these practices with malice and with reckless disregard and indifference to Plaintiffs federally protected rights.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendants, jointly and severally, as follows:

a. Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

b. Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

c. Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

d.    An award for the value of lost fringe and pension benefits, past and
future;

e.    An award of interest, costs, and reasonable attorney fees;

f.    An injunction prohibiting any further acts of retaliation or
discrimination; and

g.    Whatever other equitable relief appears appropriate at the time of
final judgment, including but not limited to reinstatement.

## COUNT 3

## <u>VIOLATION OF THE ELLIOTT-LARSON CIVIL RIGHTS ACT (ELCRA)</u>
## <u>MCL 37.2101 *et seq*.</u>

### (Race Discrimination and Retaliation)

145. Plaintiff repeats and re-alleges the allegations set forth above.

146. At all relevant times hereto, Defendant RSM and the individual Defendants
were each an "employer" within the meaning of Michigan's Elliott-Larsen
Civil Right Act, MCL 37.2101 (hereinafter referred to as the "Act"),
wherein corporations and individuals can be found directly liable for their
actions if they engage in discriminatory conduct that causes a harassing
and/or hostile environment, or other violations of the Act.

147. At all relevant times hereto, Defendant(s) had a duty under the Act not to discriminate, harass, and/or retaliate against Plaintiff because of his race, and/or because of his complaints of race discrimination, but violated said duties.

148. At all times relevant hereto, Plaintiff belonged to a protected group.

149. Plaintiff was subjected to unwelcome, offensive, and harassing discriminatory conduct during his employment at Defendant RSM which was perpetrated upon him by Defendants.

150. The unwelcome and hostile conduct or communication by Defendant(s) was intended to or in fact did substantially interfere with Plaintiff's employment and/or created an intimidating, hostile, or offensive work environment for Plaintiff.

151. Plaintiff was subjected to unwelcome hostile conduct or communication by Defendant(s) because of his race and/or complaints relating thereto.

152. During the times referenced herein, Plaintiff was harassed or discriminated against on numerous occasions.

153. Defendant(s)' acts were willful, intentional and malicious.

154. Plaintiff notified Human Resources and his superiors, including his supervisor's superiors, of the harassing and discriminatory conduct, but

Defendant RSM failed to take any appropriate remedial or corrective action.

155. Plaintiff was a victim of retaliatory conduct on the part of Defendants, such conduct which was ongoing and pervasive, and constituted a "continuing violation" of Plaintiff's rights.

156. During Plaintiff's employment with Defendants, Plaintiff was subjected to different terms and conditions of employment, as compared to other similarly situated co-workers who were outside Plaintiffs protected class, due to his race.

157. Plaintiffs race was at least one factor that made a difference in Defendants' actions and employment decisions regarding Plaintiff.

158. Defendants' actions were made in an intentional disregard for Plaintiff's rights.

159. As a direct and proximate result of Defendant(s)' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; humiliation, anxiety, frustration, helplessness, depression, sadness, indignation, sleeplessness, embarrassment, degradation, shame, nausea, headaches, grief, dejection, misery and physical harm, and loss of the ordinary pleasures of everyday

life, including the right to a gainful occupation of choice.  Plaintiff is also entitled to additional compensatory, exemplary and/or punitive damages.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendants, jointly and severally, as follows:

a.   Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

b.   Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

c.   Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

d.   An award for the value of lost fringe and pension benefits, past and future;

e.   An award of interest, costs, and reasonable attorney fees;

f.   An injunction prohibiting any further acts of retaliation or discrimination; and

g.   Whatever other equitable relief appears appropriate at the time of final judgment, including but not limited to reinstatement.

Respectfully submitted,


*/s/ Thomas R. Warnicke*
THOMAS R. WARNICKE (P47148)
LAW OFFICES OF THOMAS R. WARNICKE, PLLC
16291 W. 14 Mile Road, Suite 21
Beverly Hills, MI 48025
(248) 930-4411
tom@warnickelaw.com
Attorneys for Plaintiff

## **JURY DEMAND**

Plaintiff hereby demands a jury trial in this action.


Respectfully submitted,


*/s/ Thomas R. Warnicke*
THOMAS R. WARNICKE (P47148)
LAW OFFICES OF THOMAS R. WARNICKE, PLLC
16291 W. 14 Mile Road, Suite 21
Beverly Hills, MI 48025
(248) 930-4411
tom@warnickelaw.com
Attorneys for Plaintiff